**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 2:12-CR-00041 |
| v. | : | JUDGE SARGUS |
| CHRISTOPHER J. MATEEN, | : | |
| Defendant. | : | |

**<u>DEFENDANT'S SENTENCING MEMORANDUM</u>**

**I.      INTRODUCTION**

Christopher J. Mateen is before the Court for sentencing pursuant to his plea of guilty to one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). After the November 1, 2010 guideline amendments, the Sentencing Commission made it clear that sentences can only be imposed after moving through the following three-step process: (1) properly compute the applicable guideline sentencing range; (2) determine the propriety of a departure from the guideline range; and (3) apply the relevant §3553(a) factors. USSG §§1B1.1 (a)-(c). Adherence to this procedure will yield a sentence that is "sufficient but not greater than necessary" to satisfy Congress' sentencing mandate.

**II.      APPLICATION OF THE MANDATORY MINIMUM PENALTY**

Possession of child pornography ordinarily carries a maximum potential penalty of ten years. Possession of child pornography carries a ten-year mandatory minimum penalty, and a maximum penalty of twenty years, if a defendant has a prior conviction under "chapter [110], section 1591 [18 USCS § 1591], chapter 71, chapter 109A, or chapter 117 [18 USCS §§ 2251 et seq., §§ 1460 et seq., 2241 et seq., or 2421 et seq.], or under section 920 of title 10 (article 120 of the Uniform Code of

Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography." 18 U.S.C. §§2252(b)(2).

Mateen has a prior conviction for Gross Sexual Imposition (GSI) in Case No. 06CR7740 in the Franklin County Court of Common Pleas.  As noted in the Plea Agreement, it is the position of the United States that this conviction is a prior conviction "under the laws of any State relating to aggravated sexual abuse, sexual abuse or abusive sexual conduct involving a minor or ward," and that Mateen is therefore subject to a ten-year mandatory minimum penalty for the instant offense. Mateen expressly reserved the right to challenge whether his prior conviction for GSI qualified as predicate offense for the purposes of enhancing Mateen's statutory penalty pursuant to 18 U.S.C. §§2252(a)(4)(B) and (b)(2).

Although a number of federal Circuits have construed the "relating to" language contained in 18 U.S.C. §2252(b)(2) as giving the Court authority to "look beyond the mere elements of a prior state conviction in determining whether the such conviction is sufficient to trigger application of the sentencing enhancement provisions," *United States v. McCutchen*, 419 F.3d 1122, 1126-27 (10th Cir. 2005), the Sixth Circuit requires the Court to analyze Mateen's prior conviction under the "categorical approach" articulated in *Taylor v. United States*, 495 U.S. 575, 601, 110 S. Ct. 2143, 109 L. Ed. 2d 607 (1990), and extended to plea-based convictions in *Shepard v. United States*, 544 U.S. 13, 26, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005).  *See United States v. McGrattan*, 504 F.3d 608 (2007); *see also United States v. Cole*, 504 F.3d at 612, 329 Fed.Appx. 613, 615 (6th Cir. 2009) ("While we readily concede that there is a surface appeal to the more expansive approaches adopted

by our sister circuits, *McGrattan* considered similar cases advanced by the government and rejected them in favor of the Shepard analytical framework.")

Under the categorical approach, the court must look only to the fact of conviction and the statutory definition–not the facts underlying the offense. *United States v. Armstead*, 467 F.3d 943, 947 (6th Cir. 2006) (discussing *Taylor* and *Shepard*). "One of the policies animating the Court's adoption of this approach was to avoid 'the practical difficulties and potential unfairness' of permitting a sentencing court to relitigate the facts and delve into the details of a prior conviction." *Id.* (quoting *Taylor*, 495 U.S. at 601).

*Taylor* recognized a "narrow exception" when the statutory definition is ambiguous, under which the court may examine the charging papers or jury instructions to determine whether the convicting jury necessarily found all the requisite elements of an offense. *Id.* at 947. In addressing plea-based convictions in *Shepard*, the Court limited examination under this exception to "the terms of the charging document, the terms of a plea agreement or transcript of the colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 26. However, this "modified" categorical approach "may be used only to determine *which* crime within a statute a defendant committed, not *how* he committed that crime." *United States v. Woods*, 576 F.3d 400, 405 (7th Cir. 2009)(emphasis in original); *see also United States v. Soto-Sanchez*, 623 F.3d 317, 320 (6th Cir. 2010).

In divining whether an offense is a qualifying prior, the Sixth Circuit noted in *McGrattan*, the Court must begin by "examining whether [Mateen's] statute of conviction falls within the four

corners of the federal statute.  If that process is not conclusive, [the Court may] examine available documents permissible under *Shepard* and *Taylor.*"[1]

The terms "aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor" are defined in 18 U.S.C. § 2244-2246.  Under federal law, "abusive sexual conduct" involving a minor occurs when a person "knowingly engages in or causes sexual contact with or by another person" who is younger than 16 years of age.  *See* 18 U.S.C. §§2244 (a)(4) and (5).  "Sexual contact" means "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."  18 U.S.C. §2246.

The version of O.R.C. §2907.05 under which Mateen was convicted states in relevant part:

> No personal shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any . . .

of five aggravating factors apply.  *See* O.R.C. §2907.05(A)(1)-(5) (2005).  Depending on which subsection of O.R.C. §2907.05 a defendant is convicted under, the offense is either a fourth degree felony (punishable by up to 18 months) or a felony in the third degree, punishable by up to five years in prison.  As the Sixth Circuit noted in *United States v. Dattilio,* the definition of "sexual contact" is "nearly identical under federal and Ohio law."  442 Fed.Appx. 187, 191.  Therefore, the Court found that Dattilio's conviction under O.R.C.  §2907.05(A)(3)(1987) constituted abusive sexual contact involving a minor.  *Id.* at 190-191.

---

[1]In *McGrattan*, the Sixth Circuit analyzed the applicability of an enhancement pursuant to 18 U.S.C. §2252A(b)(1), which contains enhancement language that is identical to that contained in 18 U.S.C. §2252(b)(2).  In determining whether McGrattan's conviction under O.R.C. §2907.323 was an offense "relating to. . . possession. . . of child pornography," the Sixth Circuit looked to the federal definition of "child pornography" contained in 18 U.S.C. §2256(8)(a).

Mateen concedes that, under the reasoning set forth in *Dattilio*, GSI is an offense "relating to. . . abusive sexual contact." However, that does not end the inquiry as to whether Mateen's GSI conviction qualifies him for the enhanced mandatory minimum penalty. Dattilio was convicted under a subsection of O.R.C. §2907.05 (1987) which required proof that the victim was less than thirteen years of age. *Dattilio*, at 190, n.3. Further, pursuant to his plea agreement with the government, Dattilio "stipulated that in 1987 he was convicted of gross sexual imposition on a child under the age of 13 under Ohio law." *Id.* at 188.

In the recently decided case of *United States v. Ferguson*, 681 F.3d 826 (June 5, 2012), the Sixth Circuit analyzed Michigan's fourth-degree criminal sexual conduct statute, Mich. Comp. Laws § 750.520e (similar to GSI), to determine if Ferguson's prior conviction for violating this statute was a qualifying prior. The Court determined that Mich. Comp. Laws § 750.520e is a divisible statute, and not every subsection requires that the victim be a minor. The Court found that, because it is necessary that the victim be a minor in order to receive a sentence enhancement under 18 USC § 2252A(b)(2), the statutory definition alone cannot serve as the predicate for a sentence enhancement. *Id.* at 835.

The Court then analyzed Ferguson's conviction under the modified categorical approach to determine which section of § 750.520e Ferguson was convicted under.

> The felony information, as amended, charged Ferguson with two counts of "engag[ing] in sexual conduct with another person, to wit: [redacted], said victim being at least 13 but less than 16 years old, to wit: [14/15] years old and the defendant being at least 5 years older than the victim," which substantially tracks the language of—and thus demonstrates charges under—section 750.520e(1)(a).
> *Id.* (internal citations omitted).

The Court held that "[b]ecause the victim must be a minor for a conviction under this subsection of the statute, Ferguson is therefore eligible for the minimum sentence under 18 U.S.C. § 2252A(b)(2)." *Id.*

In contrast, Mateen's offense of conviction did not have as an element that the victim was a minor.[2] As the Entry of Guilty Plea and Judgment Entry make clear, Mateen was convicted of a felony of the fourth degree. *See* Defendant's Exhibit 1. *See* O.R.C. §2907.05 (2005). Ohio §2907.05(A)(4) (2005) prohibits sexual contact when the victim is less than thirteen years of age. Pursuant to O.R.C. §2907.05(B) (2005), a violation of subsection (A)(4) is a felony of the third degree, whereas violations of (A)(1)-(3) and (5) are felonies of the fourth degree. The age of the victim is not an element of the offense when an individual is charged with a fourth degree felony violation of (A)(1)-(3) or (5). Mateen therefore submits that he does not have "a prior conviction. . . relating to. . . abusive sexual conduct involving a minor."

Mateen submits that a further inquiry into the facts of his prior conviction to determine the age of the victim is not permissible under the modified categorical approach because use of *Shepard* approved documents "may be used only to determine *which* crime within a statute a defendant committed, not *how* he committed that crime." *Woods*, 576 F.3d at 405(emphasis in original); *see also Soto-Sanchez*, 623 F.3d at 320.

In *Johnson v. United States*, 130 S. Ct. 1265 (2010), the Supreme Court analyzed whether the Florida felony offense of battery "by [a]ctually and intentionally touch[ing]" another person, *Fla.*

_____

[2]While Mateen was originally indicted for statutory rape of a minor victim, the Court is prohibited from "reliance on the charging document's descriptions of the conduct underlying the conviction where the defendant pleaded guilty to a lesser-included charge and the conduct was not 'essential to the offense to which [the] defendant pleaded.'" *United States v. Gardner,* 649 F.3d 437, 443 (6th Cir. 2011).

*Stat. § 784.03*, "has an element the use . . . of physical force against the person of another," 18

U.S.C. § 924(e)(2)(B)(I), and thus constitutes a violent felony under the ACCA. 130 S. Ct. at 1268.

As part of the analysis, the Court addressed the circumstances under which the modified categorical

approach is available. In response to concerns raised by the government that the Court's narrow

definition of "physical force" could undermine the government's ability to obtain removal of an

alien based on prior convictions for battery, *see id.* at 1273, the Court stated that the modified

categorical approach was available "[w]hen the law under which [a] defendant has been convicted

contains statutory phrases that cover several generic crimes, some of which require violent force

and some of which do not," and that in such cases the modified approach "permits a court to

determine which statutory phrase was the basis for the conviction by consulting the trial record."

*Id.* at 1273-74 (emphasis added); see also *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009) (noting that

the modified categorical approach can be used to "determin[e] which statutory phrase (contained

within a statutory provision that covers several different generic crimes) covered a prior

conviction").

Following the recent Second Circuit decision in *United States v. Beardsley,* 2012 U.S. App.

LEXIS 18213 (August 27, 2012) (rejecting the use of the modified categorical approach in

determining whether Beardsley had a qualifying prior conviction under 2252(A)(b)(1)), almost every

federal Court of Appeals, "in a range of contexts that includes the ACCA and the [Immigration and

Nationality Act], have adopted a divisibility rule for the modified categorical approach." *Id.* at *32.

As noted by the Second Circuit:

> The First, Third, Fourth, Fifth, Seventh, Eighth, and Eleventh Circuits all take the view that
> only statutes of prior conviction that are divisible into qualifying and non-qualifying
> predicate offenses may be subject to modified categorical analysis. The approaches of the

Sixth[3] and Tenth Circuits are somewhat ambiguous, and the D.C. Circuit appears not to have addressed the issue. Only the Ninth Circuit has clearly rejected a divisibility requirement for the modified categorical approach, and has done so in sharply divided en banc panels. *Id.* at \*32-33.

Recently, the Supreme Court granted a petition for a writ of certiorari in the case of *United States v. Descamps,* 466 Fed. Appx. 563 (9th Cir. 2012). *Descamps v. United States,* 2012 LEXIS 5083 (2012). The sole question for review by the Supreme Court is:

> Whether the Ninth Circuit's ruling in *United States v. Aguila-Montes De Oca*, 655 F.3d 915 (9th Cir. 2011), (*En Banc)* that a state conviction for burglary where the statute is missing an element of the generic crime, may be subject to the modified categorical approach, even though most other Circuit Courts of Appeal would not allow it.
> *Descamps v. United States,* 2012 LEXIS 5083 (Petition for Writ of Certiorari).

Mateen submits that his offense for GSI, a fourth degree felony, is not sufficient to trigger the sentencing enhancement contained in 18 U.S.C. §2252(b)(2). Mateen was convicted under a divisible statute. It is clear that the subsection of the statute under which Mateen was convicted did not require that the victim was a minor. The modified categorical approach does not permit further digging into the facts underlying Mateen's conviction to determine "*how* he committed that crime."

## III.    CORRECT GUIDELINE APPLICATION

---

[3]Compare *United States v. Ferguson*, 681 F.3d 826, 835 (6th Cir. 2012) (analyzing subsections of Michigan's fourth-degree criminal sexual conduct statute, "a divisible statute"), and *Kellermann v. Holder*, 592 F.3d 700, 703 (6th Cir. 2010) ("[I]f the statute contains some offenses which involve moral turpitude and others which do not, it is to be treated as a 'divisible' statute, and we look to the record of conviction . . . ."), with *United States v. Armstead*, 467 F.3d 943, 947-48 (6th Cir. 2006) (applying the modified categorical approach where state statute of conviction was "ambiguous""); see also *United States v. Young*, 580 F.3d 373, 380 n.8 (6th Cir. 2009) ("Shepard documents may only be examined where a statutory provision can be divided into two or more criminal categories, at least one of which is a violent felony and at least one of which is not.").
*Beardsley* at \*37-38, n4.

8

If the Court determines that Mateen's prior conviction for GSI qualifies as an offense relating to "abusive sexual conduct involving a minor or ward," Mateen is subject to a mandatory minimum penalty of 120 months. In that instance, the sentencing range recommended by the Guidelines would be 121 to 151 months, based upon an offense level of 30 and a criminal history category of III. If the Court finds that the mandatory minimum penalty does not apply, Mateen's guideline range would be 120 months pursuant to USSG §5G1.1(b).

## IV. DEPARTURE BASES

Neither Mateen nor the government has identified any basis for departure from the applicable guideline range.

## V. SENTENCING FACTORS–18 U.S.C. §3553(a).

The final step of the sentencing analysis requires this Court to determine what sentence is sufficient, but not greater than necessary, to satisfy Congress' sentencing mandate. Mateen points to the following three §3553(a) factors to answer this statutory question: (1) the nature and circumstances of the offense; (2) his history and characteristics; and (3) the sentencing range called for by the advisory guidelines. In the end, Mateen submits that a below guideline sentence would not diminish the seriousness of his offense, would provide just punishment, and protect the public.

### (A) NATURE AND CIRCUMSTANCES OF THE OFFENSE–§ 3553(a)(1).

Mateen acknowledges that his offense is serious. Mateen knowingly possessed numerous computer files containing images and videos of child pornography. The Supreme Court has recognized that punishing child pornography consumers is a compelling state interest. *See, Osborne v. Ohio*, 495 U.S. 103, 110 (1990). "Laws criminalizing the possession of child pornography are

9

in place to reduce the market for exploitation of the children that are severely victimized by this crime." *United States v. Stern*, 590 F. Supp.2d 945, 951 (N.D. Ohio 2008).

"Yet a spectrum of criminal culpability is involved in this crime.  Those who produce and distribute these images are at one end of the spectrum.  They deserve the harshest punishment." *United States v. Cruikshank*, No. 2:09-cr-00102, 2009 U.S. Dist. LEXIS 103279, at *10-11 (D. S.D. W. Va. Nov. 6, 2009).  "The individual who possesses child pornography, while demanding punishment, is 'considerably less culpable than a producer or distributor of the exploitative materials and is a marginal player in the overall child exploitation scheme.'" *Stern*, 590 F. Supp.2d at 952, *quoting United States v. Baird*, 580 F. Supp.2d 889, at *13 (D. Neb. 2008).

"[W]anting to punish someone for the crimes that these horrible images embody, society seeks harsh sentences for anyone who participates in the market.  Rarely able to catch the monsters that create the images, society reflexively nominates the consumers of this toxic material as proxies for the depraved producers and publishers." *Cruikshank*, at *15.  "While these men bear responsibility for the horrors created by child pornography, any system of justice must attempt to emotionally remove itself from natural instincts of revenge and retribution." *Cruikshank*, at *11, *citing Baird*, 580 F. Supp.2d, at 895.  "To do so, [judges] must differentiate between those who create child pornography and those who consume it." *Id.*, at *11-12.

Here, Mateen did not produce any images of child pornography.  Further, he did not contribute financially to the industry because he never paid for child pornography.  Finally, unlike many individuals convicted of possession of child pornography, there is no indication that Mateen intentionally distributed or traded images of child pornography, although his child pornography files were accessible to other users of the ARES file-sharing program.

When interviewed by law enforcement on the date of the execution of the search warrant at his residence, Mateen admitted that he had downloaded child pornography from his computer. From almost day one of his interactions with undersigned counsel, Mateen acknowledged a need for counseling and treatment to help him address the issues that led him to commit the instant offense. Mateen entered into a plea agreement with the government, agreed to be prosecuted by way of information, and has accepted responsibility for committing this offense.

**(B)     MATEEN'S HISTORY AND CHARACTERISTICS–§3553(a)(1).**

Christopher Mateen is 33 years old. He is a lifelong resident of Columbus, Ohio. Mateen has six brothers and sisters. Mateen, Jeremiah (deceased), Farrah (age 35), and Lamar (age 22), all have the same father, Lamar Banks. Mateen's elder sister, Shawntel (age 37), Lasheba (age 28), and Joshua (age 20), all have different fathers. Lamar has a different mother than Mateen.

Mateen's father, Lamont Banks, was absent from his life for as long as he can remember. Mateen does not know his age or occupation, but believes he lives in North Carolina. Mateen's biggest childhood regret is that his father abandoned him. He has never been able to understand why his father cut all ties with the family following his parents' separation. Mateen recalls meeting his father for the first time when he was sixteen years old, at the funeral of his brother who had been murdered. Mateen had contact with his father once more, in 2005, after learning that he had another sibling, Lamar, who was raised by his father. Mateen has acknowledged that even now, he still harbors a lot of resentment toward his father.

When Mateen was very young, his mother, Angela (nee. Tappan) Mateen, married Lasheba's father, James Mateen. Mateen, whose birth name was Christopher Tappan, had his name legally changed to Christopher Mateen. Unfortunately, the marriage between Angela and James Mateen

11

only lasted until Mateen was eight years old.  For a large part of his upbringing, Mateen's mother was essentially a single parent, and Mateen had no positive male influence in his life.  At times, the family struggled financially and their utility services were sometimes disconnected.

Mateen began abusing marijuana at the age of 10.  Soon, he was using it on a daily basis. Mateen's first brush with the law occurred when he was about to turn 15 years old.  Shortly thereafter, in 1995, Mateen's brother, Jeremiah, who was just one year older than Mateen, was shot in the head and killed.  Mateen has always held himself responsible for his brother's death because the individual who killed Jeremiah was an acquaintance of Mateen's who Mateen had introduced to his brother.  Following Jeremiah's death, Mateen was found to be in violation of his juvenile probation for being truant from home and missing curfew.  Eventually, Mateen's mother notified the court that she was unwilling to allow Mateen to continue to live with her.

Although Mateen has tested as having a high average intelligence level, Mateen dropped out of high school after receiving all failing grades for the 1996-1997 academic year.  Mateen indicated that the main reason he dropped out of school was to seek employment because his girlfriend was pregnant.  Mateen has two children, ages 15 and 12, from his relationship with Karen Bennett. Although Ms. Bennett's grandmother was given custody of the children, Mateen has remained involved in their lives.

With the exception of the offense that is the subject of the potential statutory enhancement, Mateen's adult record consists almost exclusively of traffic violations.  Mateen is aware of the seriousness of his current offense, as well as his prior offense.  He knows that he is in need of mental health counseling to address the issues that led him to be convicted of these very serious offenses.

12

In 2006, Mateen married his wife Keishauna.  Keishauna remains supportive of Mateen, as does his mother and siblings.

(C)     **KINDS OF SENTENCE AND SENTENCING RANGE CALLED FOR BY THE ADVISORY GUIDELINES AND THE APPLICABLE STATUTES–§ 3553(a)(1).**

In arriving at a sentence that is "sufficient, but not greater than necessary" to satisfy Congress' sentencing mandate, this Court must also consider the kinds of sentences and the sentencing range called for by the advisory guidelines and the applicable statutes.  As noted above, depending on whether the Court decides that Mateen's prior conviction qualifies him an enhanced penalty, Mateen faces either a maximum of ten years imprisonment, or a mandatory minimum of ten years up to a maximum of twenty years.  Mateen's guideline range is either 121 to 151 months, or it is capped at 120 months.

### (1) Child Pornography Guidelines Lack an Empirical Approach.

Additionally, this Court must also consider how the applicable guidelines and policy statements impact Mateen's case.  Congress originally charged the Sentencing Commission with developing guidelines that meet the "purposes of punishment" set forth in §3553(a)(2) as well as to achieve proportionality, crime control though incapacitation and deterrence, and rehabilitation.  To achieve this objective, the Commission used an empirical approach and established guideline offense levels based on data mined from past sentencing practices, including reviewing 10,000 PSRs. *United States v. Kimbrough*, 552 U.S. 85, 96 & 109 (2007).

However, this empirical approach was not used to construct USSG §2G2.2.  *Bistline*, 665 F.3d at 763.  Instead, §2G2.2 was the product, for the most part, of Congress's statutory directives. *United States v. McNerney*, 636 F.3d 772, 775 (6th Cir. 2011).  The body of law that has developed

13

in the Sixth Circuit makes it clear that a district court cannot solely reject §2G2.2 merely on the ground that Congress exercised, rather than delegated to the Sentencing Commission, its power to set the sentencing policies reflected therein. *Bistline*, 665 F.3d at 762. However, with this concession made, it is also true that a district court is not compelled to **agree** with the guideline simply because it is a product of a congressional directive. *Id.* (Emphasis supplied). Instead, as the panel in *Bistline* noted, a district court that seeks to disagree with a guideline, on policy grounds, which was the product of Congress's "retributive judgment," faces a considerably more "formidable task" than a district court would in a case where the guideline was not the product of a congressional directive. *Id.* at 764.

Even though Congress has the power to legislate penalties solely for retributive purposes as expressed in §2G2.2, it is important to also recognize that the Sentencing Commission has often openly opposed these congressionally directed changes as they were empirically bankrupt. For example, the Commission criticized the two-level computer enhancement found in USSG §2G2.2(b)(6) on the ground that it failed to distinguish serious commercial distributors of online pornography from more run-of-the-mill users. *Report to Congress: Sex Offenses Against Children Findings and Recommendations Regarding Federal Penalties*, June 1996, at pp. 25-30 (available at http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports /Sex_Offense_Topics/199606_RtC_Sex_Crimes_Against_Children/SCAC_Executive_Summary .htm). Nonetheless, the enhancement found its way into the guidelines.

In 2009, the United States Sentencing Commission published a study acknowledging its repeated acquiescence to specific congressional directives relating to USSG §2G2.2. *See*, United States Sentencing Commission, *The History of the Child Pornography Guidelines*, p. 6 (Oct. 30,

14

2009)("Through such actions as providing directives to the Commission, Congress has repeatedly expressed its will regarding appropriate penalties for child pornography offenders.").

**(2) The Congressional Directives Were Not the Product of Empirical Study.**

As noted above, it is universally accepted that the dramatic increase of guideline penalties in child pornography cases has been the direct result of congressional directives to the Sentencing Commission in 1991, 1996, 2003, and 2004.  *United States v. Pugh*, 515 F.3d 1179, 1197-98 (11th Cir. 2008).  These directives, like the guidelines they spawned, were also not the product of empirical study.  Instead, Congress' directives to the Sentencing Commission were driven by emotional pleas to "get tough on crime."  The panel in  *Bistline* made it clear that this retributive policy is a valid basis for a guideline lacking empirical study.  *Bistline*, 665 F.3d at 764.

However, even though the *Bistline* decision set the bar  high for a district court to "disagree" with  congressionally  mandated  guidelines;  this  barrier,  although  "formidable,"  is  not insurmountable.  To treat it otherwise would allow §2G2.2 to evolve from a discretionary into a mandatory guideline.  This would obviously violate the Supreme Court's holding in  *United States v. Booker*, 543 U.S. 220, 246-58 (2005).

At  the  end  of  the  day,  even  though  Congress  has  repeatedly  imposed  its  will  on  the Sentencing Commission through the congressionally mandated guideline, this will is expressed in the advisory guideline rubric, as opposed to Title 18 which would be mandatory on district courts. Moreover, Mateen submits that this Court's sentencing decision should be the product of empirical study.  Consequently, because this retributive-based policy judgment is cabined in the advisory guidelines and it is empirically baseless, a sentencing court is free to disagree with it.  In fact, the Sixth Circuit in *United States v. Cunningham*, ___F.3d___, 2012 WL 593110  (6th Cir. 2012)

interpreted *Bistline* as simply reaffirming "the authority of district courts to refuse to apply §2G2.2 enhancements on valid policy grounds so long as the basis for the rejection is adequately explained." *Id.* at *8.

### (3) Downward Variance Is Appropriate.

The fact that neither the child pornography guidelines nor their congressional directives were the product of an empirical approach is an important consideration when determining whether a downward variance is appropriate. This is true because when a guideline, like the child pornography possession guideline is not the product of "empirical data and national experience," it is not an abuse of discretion for a sentencing court to conclude that it "yields a sentence 'greater than necessary' to achieve 3553(a)s purposes, even in a mine-run case." *Kimbrough*, 552 U.S. at 110-111; *Spears v. United States*, 555 U.S. 261, 129 S.Ct. 840, 842-43 (2009). The Sixth Circuit, in an unreported decision, recognized this precise argument is "non-frivolous" and consequently, must be considered by the district court. *United States v. Keith*, 363 Fed. Appx. 377, 381 (6th Cir. 2010).

Unquestionably, the lack of an empirical basis for the child pornography guidelines must be an important factor to explain why there are so many downward variances in child pornography cases. In Fiscal Year 2011, in cases where §2G2.2 were implicated, judges sentenced below the guideline range in 1081 of 1645 cases (65.7%), only 50 of those below-guideline sentences (3% of all §2G2.2 cases) were the result of motions pursuant to USSG §5K1.1.

### (4) Redundant Sentencing Enhancements.

Aside from the congressional directives and the resultant guidelines lacking an empirical foundation, four factors in Mateen's case, that are also present in almost all child pornography cases, operate as enhancements to dramatically increase his guideline range: material involving

16

prepubescent minors, sadistic or masochistic conduct, use of a computer, as well as the number of images of child pornography. These enhancements artificially inflate Mateen's guideline range and this is an additional reason why the guidelines do not deserve controlling weight in his case. *United States v. Dorvee*, 616 F.3d 174, 186 (2d Cir. 2010) (finding that many of the "offense characteristics" in §2G2.2 are "not genuine aggravating factors" but rather are characteristics inherent in just about any downloading offense such that using them as enhancements is "irrational").

Statistics mined from the Sentencing Commission's publication, *Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2010* validate the conclusion reached by the court in *Dorvee*. Of all sentences imposed using §2G2.2 in 2010, 95.6% involved an image of a prepubescent minor (qualifying for a two-level increase pursuant to §2G2.2(b)(2)), 73.6% involved sadistic or masochistic conduct (qualifying for a four-level increase pursuant to §2G2.2(b)(4)), 96.2% involved a computer (qualifying for a two-level increase pursuant to §2G2.2(b)(6)), and 66.9% involved more than 600 images (qualifying for a five-level enhancement pursuant to §2G2.2(b)(7)(C)). *Id*. at 36-37. All of these enhancements apply in Mateen's case adding thirteen levels to his base offense level.

**VI.    CONGRESS' SENTENCING MANDATE–18 U.S.C. §3553(a)(2).**

> **(A)    A SENTENCE BELOW THE GUIDELINE RANGE DOES NOT DIMINISH THE SERIOUSNESS OF THE OFFENSE AND PROVIDES JUST PUNISHMENT, ADEQUATE DETERRENCE, AND PROTECTION OF THE PUBLIC--§§3553(a)(2)(A).**

There can be no doubt that this offense is gravely serious because Congress has correctly found that harm to young children depicted in child pornography has "a substantial and detrimental effect on society as a whole." Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No.

17

109-248, 120 Stat. 587, Sec. 501(1)(A) (2006).  Nonetheless, a below guideline sentence would not diminish the seriousness of Mateen's offense and would provide "just punishment."

A sentence of 120 months, Mateen's guideline range in the event the Court agrees that he is not subject to the enhanced penalty, is more than six times the combined total of incarceration previously served by Mateen for all of his prior convictions.  A sentence somewhere below 120 months (undersigned counsel suggests a sentence in the range of 84 months) would still result in a very substantial punishment. During his incarceration, he will be able to receive the benefit of participation in the sex offender management or sex offender treatment program.  Upon his release from incarceration, Mateen will be under the strict supervision of the United States Probation Office for a minimum of five years.  The Probation Office will monitor Mateen's computer activity, may prohibit him from interaction with children, and may require him to undergo psychiatric evaluation and treatment as needed.  Finally, Mateen will likely be required to register as a sex offender for 25 years.  The above conditions will serve to provide protection from future crimes of Mateen.

A below guideline sentence which results in seven years of incarceration will also have a deterrent effect on others who might engage in similar conduct.  To be an effective deterrent, the sentence must not only educate defendants as to the seriousness of the offense, but should make others in the community "aware that similar actions will be punished."  *United States v. Coleman*, 370 F. Supp. 2d 661, 681 (S.D. Ohio 2005), *rev'd on other grounds*, *United States v. White*, 551 F.3d 381 (6th Cir. 2008), *cert. denied*, ___U.S.___, 129 S.Ct. 2071 (2009).  To this end, others will be deterred from following in Mateen's footsteps given the particulars of his situation.

## VI.    CONCLUSION.

Mateen asks the Court to find that his prior conviction for GSI does not render him eligible for the ten-year mandatory minimum penalty outlined in 18 U.S.C. §2252(b)(2).  In light of the nature and circumstances of this offense, how the Guidelines impact Mateen's case,  as well as his history and characteristics, he requests a downward variance from the otherwise applicable advisory guideline range.  Mateen submits that a sentence of 84 months in prison and ten years of supervised release would be  sufficient, but not greater than necessary, to accomplish Congress' sentencing mandate codified in § 3553(a)(2).  If the Court finds that Mateen's prior conviction is a qualifying offense, Mateen asks the Court to sentence him to no more than 120 months incarceration.

Respectfully submitted,

STEVEN S. NOLDER
FEDERAL PUBLIC DEFENDER

/s/   Laura E. Byrum
Laura E. Byrum    (VA Bar #48150)
Assistant Federal Public Defender
10 West Broad Street, Suite 1020
Columbus, Ohio 43215-3469
Telephone: (614) 469-2999
Facsimile: (614) 469-5999
Laura_Byrum@fd.org

Attorney for Defendant
Christopher J. Mateen

19

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and accurate copy of this Sentencing Memorandum was electronically served upon Michael Hunter, Assistant United States Attorney, Office of the United States Attorney, 303 Marconi Blvd., Suite 200, Columbus, Ohio 43215, on October 4, 2012.

 /s/   Laura E. Byrum
Laura E. Byrum   (VA Bar #48150)
Assistant Federal Public Defender

Attorney for Defendant
Christopher J. Mateen

20